CASE 75—SETTLEMENT OF TRUST ESTATE—FEB. 9.

## Oliver's Assignee, Etc. v. Oliver, Etc.

APPEAL FROM CLARK CIRCUIT COURT.

HOMESTEAD—PARTNERSHIP REALTY.—A widow of a deceased partner is not entitled to a homestead out of partnership real estate until after the settlement of the firm debts. It is held in this case, however, that the chancellor's finding that there was no

partnership and hence that the widow was entitled to a homestead, is sustained by the evidence.

BECKNER & JOUETT, FOR APPELLANT.

1. Homestead should not be allowed out of real estate owned by a firm and used for firm purposes until firm debts are paid.
2. Proof shows that John Oliver, Richard Oliver and Simpson Oliver were partners in farming and distilling.
    Citations: Divine v. Mitchum, 4 B. M., 488; Lowe v. Lowe, 13 Bush, 695; Spalding v. Wilson, 80 Ky., 589.

BENTON & BUSH FOR APPELLEES.

Proof shows that John Oliver, Richard Oliver and Simpson Oliver were not partners in farming and distilling. Note to Smith v. Smith, 43 Am. St. Rep., 377; R. S. U. S., sec. 3262.

F. BUSH HODGKIN, GUARDIAN AD LITEM FOR INFANT APPELLEES. (J. M. BENTON, OF COUNSEL).

Proof shows that John Oliver, Richard Oliver and Simpson Oliver were not partners in farming and distilling.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment allotting to appellee, as widow of Simpson Oliver, homestead in a tract of land owned by her husband during the marriage relation, on which she had never released claim. It is the contention of appellants that she is not entitled to homestead in the real estate because it had been purchased with partnership funds, treated and used for partnership purposes, and constituted a part of the capital stock of a firm of which her husband was a member, and was therefore impressed with the character of personalty, and liable for the firm debts, to the exclusion of any claim of homestead.

We will not attempt to review in detail the voluminous testimony taken in this case bearing upon the question of the alleged partnership. It is sufficient to say that it

conduces to establish the following facts: That prior to 1861 three brothers, John, Simpson and Richard Oliver, lived together at the home of their father; that the farm on which they lived consisted of 350 acres, being divided into three tracts, containing 90, 102, and 153 acres, the former two tracts being owned jointly by the three brothers. John Oliver owned only one-eighth of the 153-acre tract, the share inherited by him, the remaining interest  being owned by his two brothers. In 1861 John Oliver left the farm, and purchased an interest in a distillery six or seven miles therefrom. From 1861 to 1864 he conducted this business, in partnership with D. L. Price. At the end of that time, Price sold out to one Meredith, and the business was then conducted under the name of Oliver & Meredith for three or four years.

About 1868, John Oliver, for a violation of the internal revenue · laws, was compelled to pay a fine of $10,000, and to do this he borrowed money from various persons, executing notes of himself and brothers, Simpson and Richard. These notes were renewed from time to time by John Oliver, the renewals being signed in the names of "John and R. S. Oliver" (John Oliver, and R. S. Oliver below it), "John Oliver & Co.," and "John Oliver & Bro." This indebtedness was never extinguished, and in January, 1881, had grown to such an extent as to compel all the brothers to make a joint assignment of all their assets, which consisted of the 350 acres of land, the distillery, and a lot of personalty, the assignment being made to appellants.

After the assignment, appellants sold to Simpson Oliver the tract of land for $8,000, receiving $1,000 in cash, $1,000 on the first of March, 1882, and divers sums there-

after.   Simpson Oliver died in the spring of 1894, and Assignee Henry Oliver, who was bound as surety on all the indebtedness of the brothers, fully paid off the indebtedness and in connection with Claybourne Lisle, instituted this suit to enforce a vendor's lien for the unpaid purchase money on the tract of land assigned in 1881 and sold to Simpson Oliver, making the widow and infant children of Simpson Oliver, defendants.

The widow, appellee here, asserted a right of homestead in the property for the benefit of herself and children.

If John, Richard and Simpson Oliver were partners at the date of the assignment, and the farm constituted a part of the capital stock of the firm, and the debts due by these parties were debts of the partnership, then the chancellor erred in allowing appellee homestead therein.   If, on the other hand, the debts were not partnership debts, and the land was not purchased and used for partnership purposes; it was not impressed with the character of personalty, and appellee was entitled to the homestead awarded her.

The proof on this question is conflicting.   John and Richard Oliver, the surviving members of the alleged partnership, both emphatically deny its existence, and testify that the indebtedness was wholly that of John Oliver, and a great many facts in the record seem to corroborate their statements.   The testimony shows that Simpson Oliver very rarely went about the distillery—not oftener than once a year, and that John Oliver never went about the farm, exercised any act of ownership over it, or undertook in any way to control or direct matters pertaining thereto.

The mere purchase of land with partnership money, and its use for carrying on the business of farming, furnishes no sufficient evidence of an intention on the part of the

partners to convert the land into personalty. This can only be done when an intention is shown, from the nature of the partnership business, the character and extent of the real estate involved, and the partners' mode of treating and considering it. "It would be most unreasonable to suppose that partners in farming, a business in which the real estate occupied and used is by far the most important and extensive part, intended, by purchasing lands in common, or by using the land as partnership property, to blend the land, the stock, produce, and implements of husbandry into one common, entire thing, and treat it all as personal property." See Lowe v. Lowe, 13 Bush, 696.

Even if we concede that there was a partnership existing between these brothers in the conduct of the farm, there is nothing in the proof which indicates an intention on their part to treat the land as personalty. The fact that they held it unequally would seem to rebut such a presumption. Nor is the proof at all satisfactory that Simpson and Richard Oliver ever had any real estate in the distillery. The fact that at a time of great need they came to the assistance of their brother, and assumed, with him, the heavy burden which resulted from his lawlessness, can not be regarded as conclusive evidence of the existence of such a partnership. The fact that neither of them gave any attention to the business of the distillery, or were at any time connected with its management, clearly indicates that they had no real pecuniary interest therein.

For the reasons indicated, the judgment is affirmed.